

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Homer Leonard, Speaker,
House of Representatives
Austin, Texas

Dear Mr. Leonard:

Opinion No. 0-4104

Re: Whether or not a state bank
in the hands of the Banking
Commissioner for liquidation
may be reopened for business,
and whether or not a state
banking institution may change
its place of business.

You request an opinion from this department in
answer to the following questions, to-wit:

"1.    Can a State Bank which is in the
hands of the Commissioner for
liquidation either voluntarily
or otherwise be reopened for busi-
ness and under what procedure?

"2.    Can a State Bank placed in volun-
tary liquidation by the Board of
Directors be reopened and resume
business, and if so by what pro-
cedure?

"3.    Can a State Bank change its domi-
cile from one town to another in
this State and by what procedure?"

Article 451 of the Revised Civil Statutes relates to
the liquidation of a bank which has come into the possession
of the Banking Commissioner, either by the voluntary act of
the Board, under Article 450, or by the initiation of the Com-
missioner in taking over the bank, under Article 369 of the
statute.

Honorable Homer Leonard, - page 2

Article 452 declares:

"Such bank may, with the consent of the
State Banking Board, resume business upon
such condition as may be approved by the
Board. Such consent shall be evidenced by
written statement from the Commissioner."

The procedure in such a case would be for the
bank, acting through its directors, to make known to the
Banking Board its desire to resume business, and to ac-
company such request by such statement and information
as the Board may think pertinent, and upon satisfying
the Board, the Board should formally express its consent
to such reopening, which consent should then be evidenced
by the Banking Commissioner's written statement to the
Board, upon which authority the bank would be authorized
to reopen.

This answers your questions 1 and 2, assuming
that your question 2 relates to a bank which has been
placed by its board in the hands of the Commissioner for
liquidation upon the grounds of insolvency, or other
statutory ground.

If your question No. 2, however, contemplates
a voluntary liquidation by the Board itself of a solvent
bank, which has in nowise come into the hands of the Com-
missioner for liquidation, our answer to that question
would be that such solvent bank, even though in the
process of self-liquidation, may nevertheless resume its
normal banking functions so long as it is solvent. In
such a case it would be wise for the Board before resum-
ing business to obtain from the Banking Commissioner his
approval, that is to say, making sure that no grounds ex-
ist which would justify the Commissioner in taking sum-
mary charge of the bank, under Article 369 of the statutes.

Replying to your third question, we refer you
to Article 381a of Vernon's Codification of the Revised
Civil Statutes, which declares that any state bank, or
bank and trust company, may amend its charter "for any other
lawful purpose".

While the statute (Article 377), governing the
organization of banking institutions, requires that the
articles of association shall state, "* * * the name of
the city or town and county in which the corporation is

Honorable Homer Leonard - page 3

to be located", yet, under the statute of amendment above cited, the charter may be amended for the purpose of changing the domicile of the bank, for this is a lawful purpose -- certainly it is not unlawful.

Article 381a authorizing charter amendments contemplates, generally, that the amendment becomes effective when adopted by a vote of the stockholders holding two-thirds interest of the capital stock, and when approved by the Banking Commissioner and filed in the archives of his office. But, in respect to an amendment which contemplates the change of the bank's domicile, there are other statutes which would require the approval of the Banking Board. We refer to Article 384 respecting the public necessity of the business of the community in which it is sought to establish a bank, and to Article 391, regulating the amount of capital stock upon the basis of population of the town or city in which the bank is to be located.

We think these statutes, pertaining as they do to the lawful, constitutional and statutory scheme of regulation of such corporations, should be read in connection with Article 381a, authorizing charter amendments, and that all of them should be respected and none violated in any such proposed amendment.

Furthermore, we would suggest, though we do not decide, that the amendment of a charter with respect to the place of domicile of the bank might be held to be such a fundamental change in the corporate existence as to require the approval of the stockholders.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

APPROVED 1941

ASSISTANT
GENERAL

OS-MR

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN